## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CALDERA PHARMACEUTICALS, INC.,

        **Plaintiff,**

vs.                                                    Civ. No.  10-222 JH/RHS

JOEL J. BELLOWS and
BELLOWS & BELLOWS, P.C.,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion and Memorandum of Law in Support of Their Motion To Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) Or, for Failure to State A Claim Pursuant to Rule 12(b)((2), Or, In the Alternative, For A Transfer of Venue* [Doc. No. 6].   After reviewing the motion, response, and reply, as well as the Defendants' supplemental reply, the Court concludes that the motion should be granted in part and denied in part as further described herein.

## DISCUSSION

I.      **PERSONAL JURISDICTION**

      A.      **Legal Standard**

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008). The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction

over the defendant." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (internal quotation marks omitted). "All factual disputes are resolved in favor of the plaintiff[ ] when determining the sufficiency of this showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009). "[T]o defeat a prima facie showing of jurisdiction, the defendant must demonstrate that the presence of some other considerations would render jurisdiction unreasonable." *TH Agric. & Nutrition*, 488 F.3d at 1286 (internal quotation marks omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Id*. at 1286-87 (internal quotation marks omitted). The New Mexico Supreme Court has held that the New Mexico long-arm statute is coextensive with the constitutional limitations imposed by the due process clause. *See Tercero v. Roman Catholic Diocese of Norwich*, 132 N.M. 312, 48 P.3d 50, 54 (2002). Thus, the Court need not conduct a statutory analysis apart from the due process analysis. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).

The due process analysis consists of two steps. First, the Court should consider "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This minimum-contacts standard may be satisfied by showing general or specific jurisdiction.[1] *See*

---

[1] "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citation omitted).

*id.* Second, if the defendant has minimum contacts within the forum state, the Court should determine "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Calif.*, 480 U.S. 102, 105 (1987) (plurality opinion)).  This analysis is fact specific. *TH Agric. & Nutrition*, 488 F.3d at 1287, 1292.

> **B.     Facts**

The facts, viewed in the light most favorable to the Plaintiff, are as follows.  The Plaintiff, Caldera Pharmaceuticals, Inc. ("Caldera") is a Delaware corporation with its principal place of business in Los Alamos County, New Mexico.  At all relevant times, all of Caldera's employees were residents of New Mexico; however, Caldera received some mail in Chicago, Illinois at the offices of Resource Equities LLC, a company owned by Caldera director Sigmund Eisenschenk.  In addition, Caldera opened a checking account at Bank of America in Chicago for the purpose of receiving investor funds.

Individual defendant Joel Bellows ("Mr. Bellows") is an attorney who resides in Chicago, Illinois.  Mr. Bellows is licensed to practice law in the States of Illinois and California, but he is not licensed to practice law in New Mexico.  He owns no real estate or personal property in New Mexico, and has never traveled to New Mexico in connection with any of the events relevant to this case.

Corporate defendant Bellows and Bellows, P.C. ("Bellows PC"), a law firm, is an Illinois professional corporation located in Chicago.  Mr. Bellows is a name partner in Bellows PC, which

---

In this case, the Caldera does not appear to assert that this Court has general personal jurisdiction over the Defendants, but rather specific jurisdiction arising from particular purposeful conduct directed at New Mexico.

employs no attorneys who are licensed to practice law in New Mexico, owns no property in New Mexico, and has no place of business in this State.

On September 24, 2005, Dr. Benjamin Warner ("Dr. Warner"), the Chief Executive Officer of Caldera, and Sigmund Eisenschenk ("Mr. Eisenschenk"), its director and second-largest shareholder, met with Mr. Bellows in Chicago. Mr. Eisenschenk set up the meeting, as he had a long-standing business relationship with Mr. Bellows. The pair solicited Mr. Bellows to invest in Caldera. Mr. Bellows agreed to invest $200,000 in Caldera, provided that he be hired to prepare a private placement memorandum ("PPM") regarding the sale of Caldera stock as well as to perform all of the company's corporate legal work. Dr. Warner agreed to those terms. At that time, Caldera engaged Bellows PC as legal counsel and entered into a retainer agreement with the law firm; Mr. Eisenschenk signed the retainer agreement in Chicago on behalf of Caldera. Dr. Warner also agreed, at Mr. Bellows' request, to hire an employee of Bellows PC, Seddie Bastanipour ("Ms. Bastanipour"), to perform accounting work for Caldera. Neither Mr. Bellows nor any employee of Bellows PC ever traveled to New Mexico in connection with the provision of services to Caldera. However, Mr. Bellows and Bellows PC sent numerous drafts of the PPM to Dr. Warner in New Mexico. Ultimately, Mr. Bellows purchased 105,000 shares of stock in Caldera for $210,000. He sent his payment for the shares to Caldera's bank in New Mexico. Dr. Warner signed the stock certificate in New Mexico and delivered it to Mr. Bellows in Chicago.

In addition, over an approximately 18-month period, various attorneys from Bellows PC performed legal services for Caldera regarding all aspects of its corporate operations, including those governed by New Mexico law. For example, Bellows PC advised Caldera on the solicitation of investors, drafted the PPM, prepared an employee confidentiality agreement for Caldera, and prepared Caldera's New Mexico corporate and franchise tax returns. Mr. Bellows advised Caldera

4

regarding the termination of an employee under New Mexico law, helped Caldera form a strategy to negotiate with Los Alamos National Laboratory regarding patent issues, approved and gave instructions on Caldera's payment of expenses for its New Mexico operations, advised Caldera on setting up its 401(k) plan for employees, and assisted Caldera in setting up payroll for its New Mexico employees.  Dr. Warner regularly communicated with Mr. Bellows on these matters via telephone and email from September 2005 through the spring of 2007.  Mr. Bellows and Bellows PC ceased providing legal representation to Caldera at that time, though they never formally terminated the attorney-client relationship.  Further, Defendants never returned to Caldera any of the books or records that they maintained on behalf of the company; accordingly, Caldera has recreated those books and records to the best of its ability, and as of this time all of its operations and accounting functions are performed in New Mexico.

Bellows PC regularly sent bills for legal work to Caldera in New Mexico, which Caldera paid to Bellows PC in Illinois.  Caldera alleges that Bellows PC billed and Caldera paid for work that Bellows PC did not actually perform.  Caldera also asserts that in an act of self-dealing and breach of his fiduciary duty to Caldera, Mr. Bellows directed Caldera to sell stock to him and to Bastanipour at a substantial discount.  Finally, Caldera contends that Mr. Bellows advised it not to purchase directors' and officers' liability insurance, which advice caused damages to Caldera.  However, Mr. Bellows and Ms. Bastanipour have sued Caldera in Illinois for alleged irregularities in the stock offering that Bellows PC created, claiming that Caldera failed to disclose to them deficiencies in certain patents owned by Caldera and claiming that its stock is essentially worthless.  As a result of those allegations, Caldera alleges that Defendants have harmed its reputation and negatively affected its ability to attract future investors.  In the course of the Illinois lawsuit, Mr. Bellows and Ms. Bastanipour obtained an Illinois default judgment against Mr. Eisenschenk and

5

attempted to garnish his New Mexico assets by domesticating the default judgment in Los Alamos County, New Mexico.  Since that time, the Illinois default judgment has been vacated.

Caldera has sued the Defendants for breach of contract (Count I), negligence (Count II), and breach of fiduciary duty (Count III).

### C.   Discussion

#### 1.   Minimum Contacts

Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum contacts standard by showing that (1) the defendant has "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1071 (10th Cir. 2008) (emphasis omitted) (internal quotation marks omitted); and (2) "'the litigation results from alleged injuries that arise out of or relate to those activities,'" *TH Agric. & Nutrition*, 488 F.3d at 1287 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

##### (a)  Purposeful Availment

"Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (internal quotation marks omitted). "[W]e must examine the quantity and quality of Defendant's contacts with [the forum state]...." *Id*. (second emphasis omitted). The purpose of this requirement is to "ensure[ ] that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *AST Sports Sci*., 514 F.3d at 1058 (internal quotation marks omitted); *accord Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009).  In short, the Plaintiff must demonstrate that the Defendants' contacts were not "random, fortuitous, or

attenuated." *AST Sports Sci.*, 514 F.3d at 1058 (internal quotation marks omitted).

The Court concludes that by involving themselves in virtually all aspects of Caldera's business activities, including its New Mexico operations, Mr. Bellows and Bellows PC have purposely availed themselves of contacts with New Mexico.  The cases cited and relied upon by the Defendants, such as *DeVenzeio v. Rucker, Clarkson & McCashin*, 121 N.M. 807, 918 P.2d 723 (Ct. App. 1996) and *Coyazo-Hernandez v. Davis & Feder*, 2005WL2296403, Civ. No. 04-1207 JB/WDS (D.N.M. April 17, 2005) (Browning, J.) (unpublished), are distinguishable because in each of those cases, the plaintiffs sought out attorneys in other states to represent them in litigation in those states. Here, Caldera did not seek out the Defendants to represent it in an Illinois lawsuit.  Rather, the company sought out an investor, Mr. Bellows, who then conditioned his investment on the grounds that he and his law firm be hired to represent Caldera on all of its corporate matters.  Thus, under the facts viewed in the light most favorable to the plaintiff, it was Mr. Bellows who not only became an investor in Caldera, but then also solicited the attorney-client relationship with the New Mexico company.  While the retainer agreement was signed by the parties in Illinois, Defendants then carried out the representation by availing themselves in Caldera's New Mexico operations, including representing Caldera on matters that were governed by New Mexico law, such as the preparation of an employee confidentiality agreement, preparation of New Mexico corporate tax returns, and termination of an employee under New Mexico law.  Defendants also involved themselves in Caldera's New Mexico business dealings by advising it on matters such as negotiations with Los Alamos National Laboratory, payment of expenses for its New Mexico operations, and both retirement benefits and payroll for its New Mexico employees.  In addition, Mr. Bellows asked Caldera to hire Bastanipour, an accountant working for Bellows PC, to perform Caldera's accounting work.  These contacts were not random, fortuitous, or attenuated.  While the Defendants

7

did not physically come to New Mexico to conduct this business, doing so instead by phone and email, they did purposefully involve themselves in Caldera's New Mexico operations and actively advise Caldera on issues governed by New Mexico law.  In that regard, Defendants are entirely different than the attorneys in *DeVenzeio* and *Coyazo-Hernandez*, as well as the other cases cited by the Defendants.

Also of persuasive value is *St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*, 2010WL774152 (D. Md. Mar. 5, 2010) (unpublished), which appears to be the only federal court decision to address the issue of whether enrolling a foreign judgment against an in-state resident constituted "transaction of business" and "purposeful availment" for purposes of personal jurisdiction.  In *St. Paul*, the Maryland district court concluded that enrolling such a judgment, just as Mr. Bellows has done here with the Illinois judgment he obtained against Mr. Eisenschenk, does satisfy those requirements.  Accordingly, the Court concludes that the purposeful availment requirement has been satisfied.

### (b)  Arise Out of or Relate to Forum Activities

The Court also must "determine whether a nexus exists between the Defendants' forum-related contacts and the Plaintiff's cause of action."  *TH Agric. & Nutrition*, 488 F.3d at 1291 (brackets omitted) (internal quotation marks omitted).  When analyzing this issue, courts generally follow one of three approaches: (1) proximate cause; (2) "but-for" causation; or (3) substantial connection.  *See Dudnikov*, 514 F.3d at 1078-80. Although the Tenth Circuit has rejected the substantial-connection approach outright, *id*. at 1078, it has not expressly "pick[ed] sides" (i.e., exclusively made an election) between the proximate-cause and the but-for-causation approaches, *id*. at 1079.  Proximate cause is the most restrictive approach and requires courts to analyze "whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."

8

*Id.* at 1078 (internal quotation marks omitted); *see O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318-19 (3d Cir. 2007) (noting that the cause of action must arise out of the defendant's in-forum conduct). "But-for" causation is less restrictive and supports the exercise of personal jurisdiction based on "any event in the causal chain leading to the plaintiff's injury." *Dudnikov*, 514 F.3d at 1078.

Here, Defendants' contacts with New Mexico easily meet both the proximate cause and the but-for causation standards, as it is precisely those contacts that are the source of Caldera's legal claims against Mr. Bellows and Bellows PC. Not only are Defendants' contacts relevant to the merits of Caldera's claims, those contacts are the very source of those claims. Thus, this aspect of the test is satisfied as well.

### 2. Traditional Notions of Fair Play and Substantial Justice

If the defendant has minimum contacts with the forum state, "we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *AST Sports Sci.*, 514 F.3d at 1061 (internal quotation marks omitted). Accordingly, the Court must analyze whether its exercise of personal jurisdiction "is reasonable in light of the circumstances surrounding the case." *Id.* (internal quotation marks omitted). The defendant bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks omitted). This reasonableness analysis requires the weighing of five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Pro Axess, Inc. v. Orlux Distribution, Inc*., 428 F.3d 1270, 1279-80 (10th Cir. 2005) (internal quotation marks omitted). "In assessing the reasonableness of jurisdiction, we also take into account the strength of a defendant's minimum contacts." *TH Agric. & Nutrition*, 488 F.3d at 1292. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id*. (brackets omitted) (internal quotation marks omitted).

Based upon its consideration of each factor, the Court concludes that the exercise of personal jurisdiction over the Defendants would not be unreasonable. The Defendants have failed to show that they would endure an unreasonable burden in appearing in this Court. Indeed, the Court agrees with Caldera that modern transportation and electronic communication make it far less burdensome to participate in litigation in another state, particularly one where the defendant has been actively conducting economic activities. Further, the State of New Mexico has an interest in resolving the dispute, which involves a New Mexico corporation and the manner the Defendants represented it on matters of New Mexico law. Caldera has an interest in obtaining convenient and effective relief by litigating in New Mexico, the site of its operations in which Defendants became so enmeshed. Finally, as to the final two factors, the interstate judicial system's interest in efficient resolution of controversies and the shared interest of the several states in furthering fundamental social policies, the Court concludes that neither of these weighs against a finding of personal jurisdiction over Defendants in New Mexico. While the District of New Mexico is quite busy, it is not so overwhelmed that it cannot effectively manage this litigation. And while the State of Illinois may have some interest in this dispute, the Court is aware of no fundamental social policy that places Illinois' interest above that of New Mexico under the facts of this case.

Accordingly, the Court concludes that Defendants' motion to dismiss for lack of personal

10

jurisdiction should be denied.

## II.      MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.      Statute of Limitations Regarding Purchase of Stock Only

Having concluded that it has jurisdiction over the parties, the Court now turns to the Defendants' next argument, which is that the two-year statute of limitations bars Caldera's claim that they are liable in both contract and tort (*see* Complaint, Doc. No. 1 at ¶ ¶ 36, 44, and 52) for purchases by Mr. Bellows and Bastanipour of Caldera stock at a discounted price.  Here, Caldera asserts a breach of contract claim, which obviously sounds in contract, as well as claims of negligence and breach of fiduciary duty.   Caldera asserts that the entire lawsuit should be characterized as one sounding in tort, despite the existence of its breach of contract claim. However, Caldera cites no authority for this unitary approach; to the contrary, the case it cites, *Terrazas v. Garland & Loman, Inc*., 2006 -NMCA- 111, ¶ 11, 140 N.M. 293, states that under New Mexico choice of law rules one first must determine how to characterize "a particular claim or issue," suggesting that one should not force all claims and issues under a single rubric.  Here, Caldera's claims of negligence and breach of fiduciary duty sound in tort while its breach of contract claim sounds in contract.

A federal court must apply the choice-of-law rules of the forum state in which it sits.  *See Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc*., 509 F.3d 1225, 1229 (10th Cir. 2007).  The Court therefore applies New Mexico choice-of-law principles.  In New Mexico, the general rule for contracts is *lex loci contractus* – the law of the place of contracting controls.  *See Ferrel v. Allstate Ins. Co.*, 144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008); *Eichel v. Goode, Inc.*, 101 N.M. 246, 251, 680 P.2d 627, 632 (Ct. App. 1984) (quoting *Merriman v. Harter*, 59 N.M. 154,

280 P.2d 1045 (1955)).  "A contract is made 'at the time when the last act necessary for its formation is done, and at the place where the final act is done. . . .' The place where the final act is done determines the applicable law for the interpretation of the contract." *Eichel v. Goode, Inc.*, 101 N.M. 246, 251, 680 P.2d 627, 632 (Ct. App. 1984)(quoting *Merriman v. Harter*, 59 N.M. 154, 280 P.2d 1045 (1955)).  Thus, a contract is generally made at the place where the last signature is affixed.  *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 248, 784 P.2d 986, 991 (1989).  It is undisputed that all signatures to the contract at issue—the retainer agreement—were affixed in Illinois.  Therefore, the Illinois statute of limitations governs Caldera's breach of contract claim, including the portion of the claim in which Caldera asserts that the stock purchases violated that contract.  That limitations period is two years, and it begins to run from the time that a plaintiff knew or should have known that a breach of contract has occurred.  735 ILCS 5/13-214.3(b)(I).  Here, with regard to the purchase of stock, Caldera suffered the allege harm at the time of the stock purchases and should have known that it had suffered harm no later than January 7, 2006, when the PPM was issued.[2]  At that time, Caldera knew, or should have known, that Mr. Bellows had purchased his stock at a substantial discount.  Indeed, the PPM says as much.  ("Bellows and/or its Principal has purchased shares in the Company at an earlier, lower valuation.")  Thus, the two year statute of limitations ran on January 7, 2008, more than two years before Caldera filed its Complaint in this case.

In tort actions, New Mexico courts follow the doctrine of *lex loci delicti commissi* and apply the law of the place where the wrong took place.  *See Torres v. State*, 119 N.M. 609, 613, 894 P.2d

---

[2] That PPM, issued January 9, 2006, stated that the price per share of Caldera stock for investors was $5.71429, substantially less than the $2.00 per share price paid by Mr. Bellows in October of 2005.

386, 390 (1995). The place of the wrong is the location of the last act necessary to complete the injury. *See id.*, 119 N .M. at 619, 894 P.2d at 390. Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred. *See First Nat'l Bank in Albuquerque v. Benson*, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (Ct. App. 1976). The Supreme Court of New Mexico has said that it will not use the place-of-wrong-rule, however, if application of the rule would violate New Mexico public policy. *See Torres v. State*, 119 N.M. at 619, 894 P.2d at 390.  Here, the place where the harm occurred was New Mexico, because—viewed in the light most favorable to Caldera—that is where Caldera received the stock purchase payment from Mr. Bellows at a reduced rate, as well as the place from which it issued him stock certificates, and therefore that is where Caldera suffered the alleged economic harm.  New Mexico's statute of limitations for professional negligence claims is four years. *See* NMSA 1978, § 37-1-4.  It too began to run when Caldera became aware of the facts supporting its claim that Mr. Bellows' stock purchase was negligent and violated his breach of fiduciary duty.  Again, that date was the date of the PPM, January 7, 2006.  Thus, the limitations period ran four years later, on January 7, 2010. Once again, Plaintiffs' Complaint, filed March 10, 2010, is time-barred.

Finally, the Court notes that even if it had concluded that Illinois statute of limitations applied, Caldera's tort claims arising from Mr. Bellows' purchase of its stock would still be time-barred.  Illinois law provides for a two-year statute of limitations for such claims, *see* 735 ILCS 5/13-214.3(b)(i), and Caldera's complaint was filed outside of that time period.

Accordingly, Defendants' motion to dismiss all of Caldera's claims arising from the stock purchase should be granted.

### B.    Failure to State a Claim

Next, Defendants argue that Caldera's remaining claims should be dismissed for failure to

state a claim.  In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  *See id.*  A plaintiff does not have to provide detailed facts but the complaint must be "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A threshold issue in this matter is whether or not to review this portion of the Defendants' motion as one to dismiss under Rule 12, or as one for summary judgment under Rule 56.  While Defendants have titled their motion as a motion to dismiss, on the other hand they ask the Court to consider affidavits and other exhibits, which suggests that Defendants are requesting relief under Rule 56.  As a general rule, in deciding a Rule 12(b)(6) motion for failure to state a claim, a federal court may only consider facts alleged within the complaint. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  When evaluating a Rule 12(b)(6) motion to dismiss, a court may not consider information outside the complaint without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (reversible error may occur where the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment).  In this case, the Court exercises its discretion and declines to convert the motion to dismiss into a motion for summary judgment, and therefore will consider only whether the allegations of Caldera's complaint are sufficient to state a cause of action.

As discussed above, Caldera's claims stemming from Mr. Bellows' purchase of Caldera

14

stock is time barred.  However, other claims by Caldera remain.  Caldera's complaint alleges that it had an attorney-client relationship with the Defendants, and that Mr. Bellows advised Caldera not to purchase directors and officers liability insurance.  Caldera contends that this advice was negligent and that it relied on this advice to its detriment, incurring defense costs for a counterclaim that the directors and officers liability insurance otherwise would have paid for.  Caldera also alleges that Mr. Bellows has used information that he obtained through the course and scope of his representation of Caldera against the company in his Illinois lawsuit against Caldera, thereby violating his duties of loyalty and confidentiality to his client.  Caldera further alleges that in the Illinois case Mr. Bellows and Bellows PC not only asserted that Caldera stock is essentially worthless, but also released sensitive and confidential information about the company that they obtained during the course and scope of their representation of the company, thereby harming Caldera's business reputation and adversely affecting its ability to attract new investors.  "To recover on a claim of legal malpractice based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff."  *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162-63, 848 P.2d 1086, 1089-90 (Ct. App. 1993).  The Court concludes that at this stage, Caldera has alleged sufficient facts to support each of these elements.  Similarly, the Complaint contains sufficient facts to support a claim that Defendants had and breached a fiduciary duty to Caldera.  Finally, the breach of contract claim is somewhat less clear.  However, reading the complaint in the light most favorable to Caldera, the Court concludes that it asserts sufficient facts to support a breach of contract claim as well—that is, it asserts the existence of a contract between Caldera and the Defendants, and it also alleges facts that would support the inference that Defendants breached the duty of good faith and

15

fair dealing that the law incorporates into every contract.  Accordingly, the Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) will be denied.

## III.      TRANSFER OF VENUE

Finally, Defendants move the Court to transfer this case to the United States District Court for the Northern District of Illinois.  Under 28 U.S.C. § 1404(a), a district court may transfer a case to another venue in which it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  "The party moving to transfer a case pursuant to §1404(a) bears the burden of establishing that the existing forum is inconvenient."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  In deciding whether the movant has met that burden, a district court should consider:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*. at 1516 (internal quotation marks omitted).  Unless weighing these factors demonstrates that "the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (brackets and internal quotation marks omitted).

After reviewing the parties' arguments, the Court concludes that the Defendants have failed to meet their burden to show that the balance of the above factors is strongly in favor of transfer to Illinois.  Of course, New Mexico is Caldera's choice of forum.  Further, the Court disagrees with

Defendants that Illinois is the sole locus of the operative facts.  While significant events did take place in Illinois, as discussed above the Defendants did choose to involve themselves with the details of the daily operations of a New Mexico corporation, to invest in a New Mexico corporation, and to advise a New Mexico corporation on issues governed by New Mexico law.  Thus, New Mexico is an equally important locus of operative facts as Illinois.  The convenience of the parties and the witnesses appears relatively balanced between the two states; there may be some non-party witnesses for whom Illinois may be more convenient, but they do not dramatically outnumber those for whom New Mexico is more convenient.  The parties do not go into a great deal of detail about the locations of documents, and there is a factual dispute about whether some documents are lost or in Illinois, but it appears that both sides maintain a fair number of documents in their respective home states.  While under New Mexico's choice of law rules it appears that the breach of contract claim will be governed by Illinois law, the two tort claims will be decided under New Mexico law, so this factor does not weigh heavily in favor of transfer to Illinois.  Finally, while the Northern District of Illinois is not as busy as the District of New Mexico, the difference in the average disposition time in civil cases—a matter of a few months—is not so large as to weigh heavily in favor of transfer.  Accordingly, the Court will deny this portion of the motion as well.

**IT IS THEREFORE ORDERED** that *Defendants' Motion and Memorandum of Law in Support of Their Motion To Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) Or, for Failure to State A Claim Pursuant to Rule 12(b)((2), Or, In the Alternative, For A Transfer of Venue* [Doc. No. 6] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Plaintiff's claims based upon Defendant Joel J. Bellows' purchase of stock in Caldera Pharmaceuticals, Inc. are dismissed as time-barred.  The remaining facets of Defendants' motion, including the motion

to dismiss for lack of personal jurisdiction, the motion to dismiss for failure to state a claim, and the motion to transfer venue, are denied.

_____
**UNITED STATES DISTRICT JUDGE**